REID, Judge.
The State of Louisiana, through the Department of Highways, instituted this expropriation suit in connection with the eastern approach’ to the Mississippi River Bridge on Baton Rouge Interstate Route La. 1-10, appropriating all the lands and improvements of the defendants Philip K. Jones and Joseph C. Dabadie, Jr. The property in question fronts 38.67 feet on the westerly side of St. Ferdinand Street by a • depth between parallel lines of 90 feet, about four blocks south of the Parish courthouse in Baton Rouge, in an area of old frame houses, many of which have been converted into commercial use. The house in question was an old residence converted into law offices.
There is no dispute as to the right of the State of Louisiana to expropriate the property. The only dispute is as to the amount of compensation to be paid the owners by the Department.
The Department of Highways obtained its appraisals on the market value and based the expropriation on the higher of two appraisals, this is, $11,100.00 which amount was deposited in the registry of the Court at the time of the filing of the suit. The defendants filed an answer in which they placed a value on the property of $18,900.-00.
In written reasons for judgment the Trial Court set the fair market value at the time of taking at $14,036.00 or $2,936.00 more than was deposited in the registry of the Court by the Department, set the fees of the two appraisers for defendants at $350.-00 each, which fees were taxed as costs, and rendered judgment accordingly. From that judgment the Department of Highways entered an appeal. The defendants filed an answer asking for an increase in the award in the amount of $1,764.00, or a total of $16,800.00.
It is the duty of the Court to determine and fix the amount of just and adequate compensation to be paid the landowner for the value of the land taken and the damages to the remaining property from the record and all the evidence in the case. Consequently, it is proper for the *540 Trial Judge to give such weight to the testimony of any witness as it may merit and to evaluate the same accordingly as he is impressed by it. He can use the testimony of one witness as to value of the land and another as to the value of the improvements according to the reason and logic which is the basis of such witness’s evidence.
In support of the valuations placed on the property in question the Department relied upon Mr. Leroy Cobb and Mr. Lawrence J. Lejeune and the defendants relied upon Mr. Albert Major Norwood and Mr. Joseph S. Simmons, all of whom were qualified as expert appraisers. As is true in most of such cases, the Department’s witnesses appraised the property at one figure and the landowners’ witnesses at another and higher figure.
Three approaches to appraisals were used by the various appraisers :
1. The whole property comparison, which was also called market data and which was based upon sales of similar properties or comparables.
2. The cost less depreciation approach, also referred to as replacement method.
3. The rental income approach.
Mr. Lejeune, appraiser for the State, valued the property at $11,050.00. He testified he used two bases for his appraisals, namely the market data basis, or, as he stated, the whole property comparison, and the replacement cost method. The first of the whole property comparisons used by Mr. Lejeune was the subject property itself which was purchased in 1960 for $7,-500.00. To this he added defendants’ cost of renovating, namely $3,500.00 putting a total value on the property of $11,000.00. The second alleged comparable was the sale of property known as the Covert property located in the same block as the subject property which had a frontage on St. Louis Street of 54.2 feet and 84.3 feet along Europe Street. That sale took place on July 3, 1963, the exact date of the expropriation, and was for $9,500.00. That property had two houses on it that had been converted into use as offices by attorneys. As the sale of the Covert property was subsequent to the date of the Certificate of Estimate of Just Compensation signed by the appraisers for the Department at the time of the expropriation of the property in question it could not have been used as a comparison in arriving at the State’s valuation at that time and therefore Mr. Le-jeune would have had to rely solely upon the purchase price, plus improvements, of the subject property for the basis of his whole property comparison made at the time of the taking. By use of the replacement cost approach, Mr. Lejeune fixed the value at $11,050.00. He did this by first finding the value of the land as though vacant and unimproved. In this connection he compared three land sales in the same general area. He testified he used these particular sales because the respective purchasers tore down any improvements on the property, thus indicating the price for the property was based upon the value of the land in question. Based upon these comparisons Mr. Lejeune set a value of $202.00 per front foot for the subject property or a total of $7,850.00 which he considered to be the value of the land. Without going into detail as to the method used, Mr. Lejeune computed the value of the improvements as $3,200.00 and added to the $7,850.00 this gave him a replacement cost approach of $11,050.00
Mr. Cobb, in using the cost approach, assigned values to various portions of the building and arrived at a total replacement figure of $14,152.00. He stated that though he could not determine the chronological age of the building, he estimated a total life of the building of 60 years and using a 50% depreciation figure arrived at a total depreciation of $7,076.00 and gave that figure as the value of the improvements. To this he added the value of the land which he estimated at $100.00 per front foot or $3,867.00, to get an indicated value by *541 the cost approach of $10,943.00 which he rounded to $10,950.00. Mr. Cobb testified he also used an income approach. He set $125.00 per month as a fair economic rent on the whole building and after taking into consideration a percentage for rent loss, taxes, insurance, repairs and other costs and expenses of the building, he got an indicated value of $7,200.00 for the improvements, which added to the land value of $3,867.00 gave an indicated value by the income approach of $11,067.00 which he rounded to $11,100.00. The Trial Judge commented he was never quite able to determine on what basis Mr. Cobb arrived at his valuation of $100.00 a front foot for the land which was out of line with the land values placed on the property by the other three appraisers, all of whom considered the same comparable sales.
Mr. Norwood, an appraiser for the defendants, testified he used a rental income valuation and comparison valuation to get a present day value and a calculation for replacement value of the property. Actually the real basis of Mr. Norwood’s appraisal was the income approach. He determined that two offices in the building were rented to lawyers for $100.00 and one office for $50.00 and that this rent included stenographic services, telephone and utilities. In addition to this he stated he derived a rent figure to be charged to Mr. Dabadie and Mr. Jones, owners of the building, and as a result of assigning various values to stenographic services, telephone and utilities, he came up with a net figure of $234.27 per month. In using an investment return of 12% he first got a valuation of $23,437 which he felt too high because the property could not be sold for that figure, and then using a 14% return reduced it to $20,888.00 which he again thought too high and so he then took an arbitrary figure of 18% return and arrived at $16,294.00, which he stated would be a realistic valuation because he felt he could show a potential investor he could realize a one and a half percent per month return on his investment if he had spent that much money for this property. At one other place in the testimony Mr. Norwood gave an income value of $15,437.32 on the property. In arriving at the value of the land he used the same sales used by the other appraisers and placed a value of $200.00 per front foot on the property or $7,717.32 for the land and he found a replacement value for the improvements of $7,720.00. He then concluded that his various calculations gave him a range of $15,437.00 to $16,291.-00 at which he thought the property could be sold.
Mr. Simmons testified he used the cost less depreciation approach and the income approach. He obtained a value of $6,545.00 for the value of the improvements and by referring to the same sales used by the other appraisers came up with $2.00 per square foot as the land value, or $6,984.00, to make a total of $13,529.00 on a cost less depreciation approach. Using the income approach, and using the same rental figure used by Mr. Norwood, Mr. Simmons arrived at a fair market value of $16,225.00. He concluded he would prefer to state that the value of the property was between $15,-750.00 and $16,800.00.
The Trial Judge considered the income approach inappropriate and “most unusual and is not what we might depend upon as being a regular or an ordinary rental use of the property” because the two owners of the building also used the building for their offices and because included in the rental figure was the cost of a legal stenographer’s services. With this finding this Court is in agreement. The Trial Judge concluded to use as a. basis for his values the value placed on the improvements by one expert and the value placed upon the land by another. He felt the most logical approach to the value of the improvements was given by Mr. Cobb as $12,152.00 and depreciation of 50%, thus placing a value of $7,076.00 on the improvements. He stated that in regard to the land three of the experts were not far apart in their values, Mr. Lejeune having placed a *542 value of $202.00 per front foot, Mr. Nor-wood $200.00 per front foot, and although Mr. Simmons used a value of $2.00 a square foot, translated into front feet this would give a value of $180.00 per front foot. The Trial Judge then stated that while it was his feeling the figure of $180.00 per front foot may be high in relation to the value of other properties in the area which had greater depth, it was not out of line in view of the fact that the property in question had a ten foot alley in the rear running through the entire block giving access to the rear of the property from both Mayflower Street and Europe Street, and in view of the fact that the subject property had provisions for offstreet parking. He thus concluded Mr. Simmons’ valuation of the land was the most logical of the four.
Taking Mr. Simmons’ figure at $2.00 per square foot or $180.00 per front foot, the Trial Court arrived at a figure of $6,960.00 as a fair value of the land, and using Mr. Cobb’s figure of $7,076.00 for the improvements, the Trial Court arrived at a total value of $14,036.00.
In answer to the contention of the Highway Department that the Covert property in- the same block had • sold for $9,500.00, the Trial Judge said he felt that was not a true comparable because the Covert property was on a one way street rather than a two way street and the property in question had greater value as a law office due to the fact it had off street parking.
It is apparent that the Trial Court felt that there were no real comparable ■sales which could be used to ascertain the true market value of the property expropriated and, therefore, the market data or -comparison method could not be used. Also, as stated above, the Trial Court did not feel that the income approach could be used -due to the peculiar' circumstances in this -case. Therefore, it was reasonable for the Trial Court to turn' to the third method of appraisal, that is, cost less depreciation, or replacement' value. As stated by this Court in State through Department of Highways v. Baddock, La.App., 160 So.2d 279:
“Where the record discloses no comparable sales of property in the vicinity, ascertainment of market value of the property taken for public purposes must be determined from other factors; one of such factors is the reproduction or replacement cost approach, with an adjustment for depreciation of improvements. * * * ”
It was logical for the Trial Judge to turn to this method in the present case in view of the conflicting appraisals and especially in view of the fact that this was one method used by all of the appraisers.
In using this method the Trial Judge felt that in view of the evidence presented the appraisal of Mr. Cobb was the most accurate in regard to the value of the improvements and the appraisal of Mr. Simmons was the most accurate in regard to the value of the land. In regard to both land and improvements, using the cost less depreciation method, three out of the four appraisers were close in each instance.
The case of the State is weakened by the fact that although both of its appraisers used the cost less depreciation method and arrived at almost the same total figure, there being only $50.00 difference, the value each placed on the land and improvements was far apart. Mr. Lejeune appraised the improvements at $3,200.00, and the land at $7,850.00, while Mr. Cobb appraised the improvements at $7,076.00 and the land at $3,867.00.
We feel that under all the circumstances, the Trial Court’s action in using this approach was not in error as it is apparent from the record that the income approach used by the appraisers for the defendants does not fit the situation herein. Neither do we feel that the comparables offered by the State were pertinent. In addition, the appraisals actually used by the Trial Judge for both land and improvements is in each *543 instance comparable to the appraisals given by two out of the other three appraisers.
It is, therefore, the opinion of this Court that the judgment of the Trial Court is correct and should be affirmed.
Affirmed.